# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SETH R. NELSON,

     Plaintiff,

              5:24-CV-1378

-v.-             (DNH/MJK)

CMC PACKAGING SOLUTIONS,
KKR and AMAZON.COM, INC.,

     Defendants.

---

SETH R. NELSON, Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, U.S. District Judge:

## ORDER AND REPORT-RECOMMENDATION

Plaintiff commenced this action on November 13, 2024 by filing a complaint (Dkt. No. 1). On November 13, 2024, United States District Court Judge David N. Hurd administratively closed this matter because plaintiff failed to pay the appropriate filing fee. (Dkt. No. 3). On November 25, 2024, plaintiff filed an amended complaint (Dkt. No. 4), together with a motion for leave to proceed in forma pauperis (Dkt. No. 6). The Clerk has sent to the court for review the amended complaint, as well as the IFP application.

1

I.    **IFP Application**

Plaintiff's IFP application declares that he is unable to pay the filing fee. (Dkt. No. 6). After reviewing plaintiff's application, this court finds that he is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d

Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.  <u>Amended Complaint</u>

Paragraph "2" of the amended complaint alleges that plaintiff was retaliated against because of his race/color, sex, sexual orientation, and lack of religion. Beyond that, the court is unable discern the factual nature of plaintiff's claim. The amended complaint is replete with conclusions, devoid of any supporting factual assertions and riddled with various unconnected complaints about corrupted software. A complaint

3

that fails to comply with the pleading requirements of Fed. R. Civ. P. 8 and 10 should be dismissed when it "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. Jun. 9, 1996), *aff'd* 1997 U.S. App. LEXIS 12289 (2d Cir. 1997).

Although plaintiff refers the court to the exhibits attached to his amended complaint, they are nothing more than an array of various documents, one of which is captioned "My Rough Allegation Summary (These are not fully accurate yet)." The court need not accept allegations for initial review that the plaintiff identifies as lacking accuracy. The court finds it troubling that plaintiff would present allegations to the court that have not been fully vetted or the accuracy of which may not have been fully investigated. The court reminds plaintiff of Fed. R. Civ. P. 11(b)(1) and his obligation not to present matters to the court for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

## III.  **Statute of Limitations**

### A. Legal Standard

"Before an aggrieved party can assert a Title VII claim in federal court, he is generally required to exhaust the administrative remedies provided by the statute." *Duplan v. City of New York,* 888 F.3d 612, 621 (2d Cir. 2018) (citing *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015)). "That is, a Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' … and must then file an

4

action in federal court within 90 days of receiving a right-to-sue letter from the agency."
*Id*. (quoting 42 U.S.C. § 2000e-5(e)(1), (f)(1)) (footnote omitted).

"The 90-day period is 'strictly enforced,'" *Hughes v. Elmira Coll*., 584 F. Supp.
2d 588, 589 (W.D.N.Y. 2008) (quoting *Holmes v. Nat'l Broad. Co.*, 914 F. Supp. 1040,
1042 (S.D.N.Y. 1996)), and "in the absence of a recognizable equitable consideration,
the court cannot extend the limitations period 'by even one day.'" *Johnson v. Al Tech
Specialties Corp*., 731 F.2d 143, 146 (2d Cir. 1984) (quoting *Rice v. New England
Coll.*, 676 F.2d 9, 11 (1st Cir. 1982)).

"Although pro se plaintiffs are entitled to leniency in other areas of litigation, the
case law is clear: The 90-day deadline is strictly enforced against represented and pro se
plaintiffs alike." *Perez v. Mason Tenders Dist. Council Tr. Funds,* No. 17-CV-1022,
2017 WL 5125542, *3 (S.D.N.Y. Nov. 1, 2017) (collecting cases and noting that "[i]f a
pro se plaintiff misses her deadline by a few days, or even one day, her action must be
dismissed as untimely"); *see also Glover v. Fed'n of Multicultural Programs,* No. 14-
CV-4006, 2015 WL 4600645, *7 (E.D.N.Y. Jul. 29, 2015) (dismissing Title VII claims
filed one day late); *Lewis v. N.Y.C. Dep't of Educ*., No. 12-CV-675, 2013 WL 5405534,
*5 (S.D.N.Y. Sept. 25, 2013) (dismissing complaint filed three days late); *Ziyan Shi v.
New York Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 342 (S.D.N.Y.
2019) (dismissing Title VII claims filed by counsel, who later withdrew from the case,
one day late).

The ninety-day period is akin to a statute of limitations which may be tolled in
certain situations. *Johnson*, 731 F.2d at 146; *see also Zipes v. Trans World Airlines,*

*Inc.*, 455 U.S. 385, 398 (1982). "Normally it is assumed that a mail document is received three days after its mailing," and it is presumed "that a notice provided by a government agency has been mailed on the date shown on the notice." *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525-26 (2d Cir. 1996) (citing *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 148, n.1 (1984)); *see also Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 37 (2d Cir. 2011). The three-day presumption can be rebutted if "a claimant presents sworn testimony or other admissible evidence from which it could be reasonably inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [the claimant] by mail." *Sherlock*, 84 F.3d at 526; *see also Gardner v. Honest Weight Food Coop., Inc.*, 96 F. Supp. 2d 154, 159 (N.D.N.Y. 2000). However, it is insufficient to rebut the three-day presumption if a plaintiff only presents evidence showing either their "own lack of recollection" or a "mere denial of receipt." *Sherlock,* 84 F.3d at 526; *see also Isaacson v. N.Y. Organ Donor Network*, 405 Fed. App'x. 552, 553 (2d Cir. 2011) (citing *Meckel v. Cont'l Res. Co*., 758 F.2d 811, 817 (2d Cir. 1985)).

Here, the EEOC's Notice-of-Right-to-Sue-letter which plaintiff alleges he received on August 6, 2024 (Amended Compl. ¶ 11), and <u>which plaintiff failed to attach as an exhibit to the amended complaint</u>, presumably notified plaintiff that he had the right to file a civil action in the appropriate United States District Court within ninety calendar days from the date he received the EEOC's decision.  Thus, plaintiff was required to file his complaint on or before November 5, 2024, which would have been within ninety days following his August 6, 2024 receipt of the Right-to-Sue-letter.

Plaintiff did not commence this action until November 13 , 2024, ninety-nine  days after receipt of the EEOC's Right-to-Sue-letter. (Dkt. No. 1). Plaintiff's action would have been untimely even if measured against his November 13, 2024 filing. (Dkt. No. 1). Despite plaintiff's pro se status, the court is obligated strictly apply the filing deadline. Accordingly, plaintiff's amended complaint must be dismissed as untimely, unless plaintiff can establish that the ninety-day time period should be tolled. *See Pryor v. Nat'l Grid*, No. 10-CV-6507, 2011 WL 3251571, at *2 (S.D.N.Y. Jul. 28, 2011) (plaintiff's action was dismissed even though filed only two days past the filing deadline).

 The doctrine of equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *See Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). In order to apply equitable tolling, the court must find that "extraordinary circumstances" prevented a plaintiff from performing the required act, and that the plaintiff acted "with reasonable diligence" during the period that he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). "The term, 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). "[I]t is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing

7

deadline." *Id*. Moreover, equitable tolling is "not a cure-all," *Wallace v. Kato*, 549 U.S. 384, 396 (2007), and "is only appropriate in rare and exceptional circumstance[s]." *Serilli-Edelglass v. N.Y. Transit Auth*., 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotations omitted).

## IV.  <u>Opportunity To Amend</u>

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

The court recommends that plaintiff's amended complaint be dismissed without prejudice as untimely, and that plaintiff be afforded leave to plead facts, to the extent they exist, that would support the court's application of equitable tolling. Any amended pleading filed by plaintiff <u>should also consist of a concise and coherent statement of facts, such that the court can discern the allegations underlying plaintiff's claims</u>.

**WHEREFORE**, based on the findings above, it is

8

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 6) is **GRANTED**,[1] and it is

**RECOMMENDED**, that the district court **DISMISS** plaintiff's amended complaint **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[2]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 11, 2024

Mitchell J. Katz
U.S. Magistrate Judge

---

[1] The court notes that although plaintiff's IFP application has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

[2] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]      On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

 **\*1** The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]      Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

 **\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4] Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 12 of 31
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled.[5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search.[6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report.[7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at *2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 13 of 31

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

 *5 The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoda*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

*7 It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected conduct was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 16 of 31

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 17 of 31

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence. [9]

[9]     The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133. [10]

[10]     The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 18 of 31

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

 **\*10**  In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

 **\*11**  Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 5:24-cv-01378-DNH-MJK   Document 8   Filed 12/11/24   Page 19 of 31

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury
"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS
Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

*12 Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion
**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 20 of 31

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

2021 WL 1345520
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrea LAPIETRA, Individually and as Power
of Attorney, and Deashon Tarver, Plaintiffs,

v.

CITY OF ALBANY POLICE
DEPARTMENT, et al., Defendants.

9:19-CV-1527 (TJM/TWD)
|
Signed 04/09/2021
|
Filed 04/12/2021

**Attorneys and Law Firms**

ANDREA LaPIETRA, Plaintiff, pro se

DEASHON TARVER, Plaintiff, pro se

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**I. INTRODUCTION**

 *1 This action was commenced by two pro se plaintiffs,
Deashon Tarver ("Tarver") and Andrea LaPietra ("LaPietra"),
individually and "as Power of Attorney" for Tarver, pursuant
to 42 U.S.C. § 1983 ("Section 1983"). Dkt. No. 1 ("Compl.").
A complete history of this action to date can be found in
prior Decisions and Orders, including this Court's Report-
Recommendation and Order issued on October 5, 2020. *See*
Dkt. No. 4, 11, 13, and 24 (the "Oct. Report-Rec.").

Presently before the Court is Plaintiffs' Amended Complaint.
Dkt. No. 33 ("Am. Compl.").

**II. THE COMPLAINT AND OCT. REPORT-REC.**

In the original Complaint, Tarver asserted the following
claims: (1) Fourth Amendment claims for unreasonable
search and seizure, false arrest, excessive force, and malicious
prosecution; (2) Fourteenth Amendment claims for excessive
force, failure-to-protect, and conditions of confinement;
(3) First Amendment retaliation claims; (4) Fourteenth

Amendment claims related to his medical and dental care;
(5) Fourteenth Amendment due process claims; (6) First
Amendment access to court and mail interference claims;
(7) constitutional claims related to the grievance process; (8)
Fourteenth Amendment equal protection claims; (9) Sixth
Amendment claims related to the right to counsel; (10) state
law claims; and (11) claims pursuant to the Americans with
Disabilities Act ("ADA"). *See generally*, Compl. LaPietra
asserted the following claims: (1) Fourth Amendment claims
for unreasonable search and seizure and false arrest; (2) state
law claims; and (3) First Amendment freedom of religion
claim. *See id.*

Following review of the Complaint pursuant to 28 U.S.C.
§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court
issued a Report-Recommendation and Order dated October
5, 2020 (the "Oct. Report-Rec.") and recommended that
Plaintiffs' claims against City of Albany Police Department
and Albany County Correctional Facility, be dismissed with
prejudice. Dkt. No. 24 at 33. This Court also found that
Tarver's Fourteenth Amendment excessive force and failure-
to-protect claims against defendants Corrections Officers
Burns ("Burns") and Remillard ("Remillard") and LaPietra's
First Amendment *Monell* claim against Albany County
were sufficiently plead. *Id.* at 33-34. The undersigned
recommended dismissal of all remaining claims without
prejudice with leave to amend. *Id.* at 34.

In a Decision and Order issued on November 30, 2020 (the
"November Order"), the Court accepted and adopted the Oct.
Report-Rec. Dkt. No. 32.

**III. SUMMARY OF AMENDED COMPLAINT** [1]

[1]   The Amended Complaint includes exhibits. *See*
     Dkt. No. 33-1 and 33-2. To the extent that the
     exhibits are relevant to the incidents described in
     the Amended Complaint, the Court will consider
     the documents. *See Cortec Indus., Inc. v. Sum
     Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)
     (the complaint is deemed to include any written
     instrument attached to it as an exhibit or any
     statements or documents incorporated in it by
     reference).

The Amended Complaint, like the original pleading, is a
rambling, disjointed mix of allegations, legal articles, statutes,
and caselaw. The pleading is 263 pages and includes 49 pages
of exhibits. The Court will employ its best efforts to discern
Plaintiffs' claims.

2021 WL 1345520

**\*2** In the Amended Complaint, Plaintiffs identify new defendants: Officer Keith Johnson, Officer Peterson, Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, Officer John Doe #4, Officer John Doe #5, Officer John Doe #6, Officer John Doe #7, Sergeant/Lieutenant Doe #8, Plain Clothes Officer Doe #9, Parole Officer Jane Doe #1, Parole Officer Jane Doe #2, Officer John Doe #10, Officer John Doe #11, Corrections Officer Durocher, Corrections Officer Haley, Corrections Officer "505", Corrections Officer Criscione, Silver Masaba, MD, Vladislav Voss, D.D.S., NP Anna Paulino, and Nurse Jane Doe #3. [2] *See* Am. Compl. at 1. Plaintiffs also assert claims against previously dismissed defendants, Officer Jan Mika, Officer Adam Iannacito, and the City of Albany. [3] *See id.*

[2]    The Clerk of the Court is directed to add these defendants to the docket report.

[3]    *See* Footnote 2, *supra.* Plaintiffs' attempt to reassert claims against Albany County Police Department and Albany County Correctional Facility is improper as these claims were previously dismissed, with prejudice.

On December 14, 2016, Plaintiffs were at LaPietra's second-floor apartment located at 1030 Washington Avenue, #2, in Albany, New York. Am. Compl. at 9. LaPietra left "to pick something up" and Tarver stayed at the apartment. *Id.*

According to Tarver, he was "coming down the stairs, and had the door to stairwell open a crack," and he and Officer Johnson "saw each other through the glass cutout window in the door to the house/vestibule." Am. Compl. at 13. Officer Johnson "pushed in on the door to the house and entered the vestibule while [Tarver] was still in the stairwell." *Id.* Officer Johnson asked Tarver what he was doing there and Tarver said he lived there. *Id.* Officer Johnson handcuffed Tarver and entered the apartment, through a closed door. *Id.* Parole Officers Jane Doe #1 and Doe #2 arrived at the scene and entered the apartment. *Id.* at 15.

When LaPietra returned to the apartment, "in excess of six uniformed police officers" were present and Tarver was "sitting and being detained handcuffed in the back seat of a police vehicle that was parked in front of the apartment" with Officer John Doe #1. Am. Compl. at 9-10, 14. LaPietra claims that her "apartment was open and the police had been through the apartment and all the personal belongings." *Id.* at 16.

Officers John Doe #2 and John Doe #3 detained LaPietra on the driveway while she was questioned by Sergeant Doe #8. *Id.* LaPietra told the Sergeant, out loud, that Tarver did not live with her, but admitted he sometimes stayed overnight "with the permission of his PO." *Id.* at 16, 19-20. Sergeant Doe #8, Officer John Doe #4, and Officer John Doe #5, entered the apartment with LaPietra and continued to question her about items that they suspected were stolen. Am. Compl. at 16-17. Officer Mika and Officer John Doe #9 arrived at the scene. *Id.* at 15. Officer Mika asked LaPietra questions, documented her information, and "stood by" as officers entered the residence. *Id.* at 12, 18, 21.

In the Amended Complaint, LaPietra states, "the police and parole officers [...] could not have [...] probable cause that [Tarver] lived there because they had his wallet, N.Y.S. ID, parole blue card, and numerous other identifying documents and failed to check it before illegally entering and searching the residence." Am. Compl. at 18. Plaintiffs also assert that Officer Johnson, Sergeant John Doe #8, Officer John Doe #4, and Officer John Doe #5 entered the residence with the knowledge that Tarver did not live there. *Id.* at 20. During the course of Tarver's arrest, officers "threatened" Tarver with a Taser and "whisper[ed] that they could get him for resisting arrest[.]" *Id.* at 30. Tarver was arrested without a warrant and charged with petty larceny. *Id.* at 2, 22.

**\*3** Plaintiffs claim that Sergeant John Doe #8 "participated" in Tarver's arrest, was responsible for the supervision of the defendant police officers, failed to intervene and prevent the ongoing misconduct of the officers, "which resulted in the arrest and prosecution" of Tarver. Am. Compl. at 24.

Later that evening, "officers" took Tarver from the police station to the emergency room at Albany Medical Center because "he tried to hurt himself[.]" Am. Compl. at 109. At the emergency room, Tarver was permitted to use the bathroom once, with an escort, without incident. *Id.* at 112. However, Tarver's subsequent request to use the bathroom was denied. *Id.* at 109-112. Tarver was told to remain seated, and when he "could not," Officer Iannacito, Officer John Doe #10, and Officer John Doe #11 tackled him onto a bed, "used force on him" and cut off his clothes. *Id.* at 112. In the "course of tackling" Tarver, Officer Iannacito fractured Tarver's "pinky finger" and the officers aggravated Tarver's preexisting "AC separation." Am. Compl. at 109-110, 112. Tarver's hands and feet were "completely shackled" at the time. *Id.* at 110. Tarver was charged with felony assault on the officer. *Id.* at 2.

2021 WL 1345520

From December 2016 until April 2018, Tarver was confined at Albany County Correctional Facility ("Albany County C.F."). During his confinement at Albany County C.F., Tarver did not receive proper medical care for his "AC separation." Am. Compl. at 132, 146. Although x-rays were taken of Tarver's shoulder, he was told by "a doctor" that, "[w]e don't do surgery here." Am. Compl. at 132-133, 197. Tarver received no other treatment or care for his shoulder complaints and his requests for an MRI and a visit with his personal physician were denied. Dkt. No. 33-1 at 21-22. During a visit, defendant Officer Criscione saw LaPietra touching Tarver's shoulder and approached Tarver because she "thought the lump on his shoulder was contraband." Am. Compl. at 131, 135; Dkt. No. 33-1 at 22. Criscione repeatedly asked what was under Tarver's shirt and LaPietra advised that it was an injury. Am. Compl. at 135. Criscione "checked under his shirt" but "didn't care he had an injury." *Id.*

During his confinement, Tarver was also denied adequate dental care. Am. Compl. at 195; Dkt. No. 33-1 at 22. Tarver "wait[ed] months to see a dentist" despite submitting numerous medical call slips. Am. Compl. at 195. On October 5, 2017, LaPietra told Officer "505" that Tarver was not receiving proper care and asked the officer to "look into Deashon's mouth." *Id.* The officer stated that he was not a dentist, told Tarver to "drop a slip," and stated "[w]e don't do root canals here[.]" *Id.*

In late October 2017, a nurse informed Tarver that he would "see the dentist in five days" and gave him Motrin for his pain. Am. Compl. at 196. When Tarver saw the dentist, he was told that there was an "issue with his wisdom teeth and a filling in another tooth" but the dentist "did nothing." *Id.* In November 2017, Tarver was given Amoxycillin however, the facility records do not indicate that he suffered from decay or infection. *Id.* As a result, Tarver had a "tooth fall straight out of his mouth" while at Albany County C.F. *Id.* at 197.

On March 9, 2018, Tarver received a letter from Prisoner Legal Services. Am. Compl. at 2, 137. On March 12, 2018, Plaintiffs filed "preliminary papers in State Supreme Court" for an extension of time to file a notice of claim. *Id.* at 2. On March 13, 2018, Tarver was assaulted while the officers performed a "squat and cough" in Tarver's cell. *Id.* at 2, 137, 217-218. Officer Burns pushed Tarver onto the bed, punched him in the face, and sprayed him with mace. *Id.* at 218, 222. At the time of the assault, Tarver was naked and in a squat position, with his back facing the officers. Am. Compl. at 222.

Officers Remillard, Durocher and Haley were present during the assault and did not intervene on Tarver's behalf. *Id.* at 218. As a result of being sprayed with mace, Tarver suffered swelling and burning in his eyes. *Id.* at 219.

**\*4** On March 15, 2018, LaPietra visited Tarver. Am. Compl. at 2, 221. At that time, Burns was "laughing" about the assault and told LaPietra that Tarver was a "bad boy," who hadn't coughed for him. *Id.* at 221.

After the incident, Tarver was placed in "lockdown" without any writing utensils or access to his mail. Am. Compl. at 2, 137. The "charges" surrounding his lockdown were not properly or timely presented to him, he was not provided with an assistant related to the disciplinary charges, and he was terminated from his job. *Id.* at 238-39. Tarver was "blocked from and denied grievances," denied books, deprived of his job, denied phone calls, and denied exercise and outdoor recreation. *Id.* at 137, 154. Tarver was "kept in solitary confinement 24 hours a day." *Id.* at 154.

Tarver also experienced "issues" with his legal mail at Albany County C.F. Am. Compl. at 193. For example, Tarver sent a letter "Judge Keefe," a "consultant" with the Center for Law and Justice. *Id.* at 193-94. Tarver marked the envelope "Attorney Mail" and placed an address on it. *Id.* The mail did not reach the intended recipient and "may have affected his rights to bring a claim against the municipality in a timely manner." *Id.*

On April 5, 2018, Tarver was released from "solitary confinement" and transferred to Downstate Correctional Facility. Am. Compl. at 2.

Construing the Amended Complaint liberally, Tarver asserts the following: (1) Fourth Amendment claims for illegal search and seizure, false arrest, and malicious prosecution; (2) Fourteenth Amendment claims for excessive force, failure to protect, deliberate medical indifference, and conditions of confinement; (3) First Amendment retaliation claims; (4) Fourteenth Amendment due process and equal protection claims; (5) First Amendment access to court and mail interference claims; (6) constitutional claims related to the grievance process; (7) Sixth Amendment claims related to the right to counsel; (8) state law claims; and (9) claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* LaPietra asserts Fourth Amendment claims for unreasonable search and seizure.

2021 WL 1345520

Plaintiffs seek unspecified injunctive relief and monetary damages. Am. Compl. at 258-59. For a more complete statement of Plaintiffs' claims, reference is made to the Amended Complaint.

## IV. SUFFICIENCY OF AMENDED COMPLAINT

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and § 1915(e) was discussed at length in the Oct. Report-Rec. and it will not be restated in this Decision and Order. *See* Dkt. No. 24 at 2-5. The Court will construe the allegations in the Amended Complaint with the utmost leniency. *See, e.g.,* *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to a less stringent standards than formal pleadings drafted by lawyers.").

### A. Claims Arising from Incidents on December 14, 2016

### 1. Fourth Amendment and Related State Law Claims

In the November Order, the Court adopted the recommendations in the Oct. Report-Rec. and dismissed Plaintiffs' Fourth Amendment claims arising out of alleged wrongdoing at LaPietra's residence on December 14, 2016, for failure to adequately plead that any individual was personally involved. Dkt. No. 24 at 16-19; Dkt. No. 32 at 3.

 **\*5**  In the Amended Complaint, Plaintiffs identified Officers Johnson and Peterson, as the "arresting officers," and named nine Doe Police Officers and two Doe Parole Officers in the caption.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiffs' § 1983 Fourth Amendment claims for illegal search, seizure, false arrest and state law claims against defendants Johnson, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Officer Mika are sufficiently plead and survive review. [4]

[4]
Because Plaintiffs' Fourth Amendment claims are asserted against officers whose names are not known to Plaintiffs, service of process cannot be effected on them unless and until these individuals

have been identified by name. If Plaintiffs wish to pursue claims against the Doe defendants, they must take reasonable steps to ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiffs must amend the operative pleading to properly name those individuals as parties.

A different conclusion is reached however, with respect to Peterson, John Doe #6, John Doe #7, and John Doe #9. In order to recover money damages in a civil rights action, a plaintiff must plead enough facts to make a plausible showing that a defendant was directly or personally involved in the alleged constitutional violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Farrel v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Conclusory allegations without any supporting factual allegations are insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although Plaintiffs contend that Peterson, John Doe #6, John Doe #7, and John Doe #9 were "present at the residence" on December 14, 2016, the Amended Complaint lacks any factual allegations that plausibly show that Peterson, John Doe #6, John Doe #7, and John Doe #9 were involved with the violation of Plaintiffs' constitutional rights in connection with the alleged illegal search and seizure. Therefore, the Court recommends that the claims be dismissed against the aforementioned defendants.

### 2. Fourteenth Amendment and Related State Law Claims

In the amended pleading, Tarver claims that Iannacito, John Doe #10, and John Doe #11 used excessive force in the Emergency Room of Albany Medical Center while he was restrained in shackles and that he was prevented from using the bathroom in violation of his due process rights. *See* Am. Compl. at 112, 176. Tarver also asserts state law claims for assault, battery, and negligent infliction of emotional distress. *Id.* at 112, 163-66, 176.

The law related to Fourteenth Amendment excessive force claims was discussed in the Oct. Report-Rec. and will not be restated herein. Dkt. No. 24 at 23-24. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that Tarver's Fourteenth Amendment excessive force claims and state law claims against Iannacito, John Doe #10, and John Doe #11 are sufficiently plead. [5]

2021 WL 1345520

5     *See* Footnote 4, *supra.*

**\*6** With respect to Tarver's due process claim, the Court finds that this allegation is not sufficiently plead. Plaintiffs concede that Tarver used the bathroom at the hospital, once "without incident." Am. Compl. at 112. Because Plaintiffs have not plead how long Tarver was denied the right to use the bathroom, the pleading does not sufficiently state a constitutional violation. *See Turner v. Procopio*, No. 13-CV-693, 2020 WL 2220244, at *11 (W.D.N.Y. Mar. 27, 2020) (collecting cases), *adopted*, 2020 WL 2219503 (W.D.N.Y. May 7, 2020), *appeal dismissed sub nom. Turner v. Doe*, No. 20-1816, 2020 WL 7329107 (2d Cir. July 8, 2020); *Allah v. Murphy*, No. 9:14-CV-0438 (GTS/TWD), 2016 WL 4401069, at *11 (N.D.N.Y. May 16, 2016) (holding that a temporary deprivation of bathroom privileges does not give rise to a protected liberty interest), *adopted*, 2016 WL 4386013 (N.D.N.Y. Aug. 17, 2016), *aff'd*, 699 Fed. App'x 41 (2d Cir. 2017).

### 3. *Monell* Claims Against the City of Albany

Tarver asserts *Monell* claims against the City of Albany related to the events that transpired in the Emergency Room. The law related municipality liability was discussed at length in the Oct. Report-Rec. and will not be restated herein. *See* Dkt. No. 24 at 14-15. In the Oct. Report-Rec, the undersigned concluded that

> plaintiffs failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City of Albany authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including unreasonable search and seizure, false arrest, excessive force incidents or any affirmative link between such a policy and defendants' alleged actions with regards to Plaintiffs.

Dkt. No. 24 at 15.

Construing the Amended Complaint liberally, Tarver alleges that the City of Albany maintains a policy of "using force first and asking questions later[.]" Am. Compl. at 158-59. However, Plaintiff does not articulate an independent basis to hold the City of Albany liable. An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett–Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell*, 436 U.S. at 690-91). "Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell...." *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006) (punctuation and citation omitted). Accordingly, the Court recommends that Tarver's *Monell* claims against the City of Albany be dismissed.

### 4. Timeliness of Claims

Before the Court can recommend that Defendants be directed to respond to the Fourth and Fourteenth Amendment claims, the statute of limitations must be addressed. As discussed in the Oct. Report-Rec., Tarver executed the Complaint on February 6, 2020, and therefore, any § 1983 claims arising out of incidents that occurred on December 14, 2016, 6 are time barred unless Tarver can demonstrate that the limitations period was tolled or that the claims are otherwise timely. Dkt. No. 24 at 19-21, 24-25.

6     The reference in the Oct. Report- Rec. to incidents that occurred on "December 16, 2016," *see* Dkt. No. 24 at 20, is a typographical error.

**\*7** In § 1983 actions, the applicable statute of limitations is the State's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted). In New York, a three year statute of limitations applies for personal injury actions and thus to Section 1983 actions. *Id.*; *see also* N.Y. C.P.L.R. § 214(5). Federal law determines when a Section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted).

For example, Fourth Amendment claims for illegal searches and false arrest accrue at the time of the violation. *See Giles v. Fitzgerald*, No. 5:20-CV-0980 (MAD/ML), 2020 WL

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 26 of 31

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2021)

2021 WL 1345520

6287459, at *4 (N.D.N.Y. Oct. 27, 2020), *adopted*, 2021 WL 248048 (N.D.N.Y. Jan. 26, 2021) (citing *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008)). Similarly, § 1983 claims for excessive force, failure-to-intervene, and failure-to-protect claims accrue "when the use of force occurred." *Fairley v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15, 2011); *see also Roundtree v. City of New York*, No. 1:15-CV-6582, 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018).

With respect to the state law claims, Tarver's assault and battery and false arrest/imprisonment claims are intentional torts and thus, governed by a one-year statute of limitations. *See* Dkt. No. 24 at 20. Tarver's negligent infliction of emotional distress claim is governed by a three-year statute of limitations. *Dawkins v. Williams*, 413 F.Supp.2d 161, 178 (N.D.N.Y. 2006) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 7–8 (1st Dep't 1999)). While assault and battery claims must be asserted within one year from the date of the incident, *see id.*, claims for false arrest or imprisonment do not accrue until "the date of the prisoner's release from confinement." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed. App'x 672, 675–76 (2d Cir. 2009) (citation omitted).

Construing the Amended Complaint liberally, Tarver asserts that he "preserved" his claims because the original complaint was filed before the statute of limitations expired. Am. Compl. at 136. Additionally, Tarver alleges that equitable tolling applies because he was "under duress" while incarcerated at Albany County C.F. and unable to timely comply with the Court's directive to execute the pleading. *See id.* at 135.

In *Kalican v. Dzurenda*, 583 Fed. App'x 21, 23 (2d Cir. 2014), the Second Circuit held that a complaint is deemed filed when the Clerk of Court receives it. With respect to an unsigned complaint by a pro se prisoner, the Court reasoned that the pleading should be filed, with directions from the court to "fix any technical errors of legal procedure." *Id.* (citing *Toliver v. Sullivan Cnty.*, 841 F.2d 41, 42 (2d Cir. 1988) (holding that complaint was timely filed where the clerk's office received it prior to the expiration of the limitations period, but did not formally file it on the docket until after granting plaintiff's in forma pauperis application, at which point the limitations period had run)).

"[E]quitable tolling is considered appropriate where [...] a plaintiff was unaware of his cause of action due to misleading conduct of the defendant or where a plaintiff's

medical condition or mental impairment prevented him from proceeding in a timely fashion." *Antonmarchi v. Consol. Edison Co. of N.Y.*, 514 F. App'x 33, 36–37 (2d Cir. 2013) (citation and internal citation omitted). "[E]quitable tolling may be appropriate where the plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition." *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002). The Second Circuit has "recognized that medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented." *Harper v. Ecole*, 648 F.3d 132, 137 (2d Cir. 2011); *see Brown v. Parkchester South Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002) (equitable tolling may be appropriate where failure to comply is attributable to medical condition).

**\*8** Here, the Complaint, dated December 5, 2019, was signed by LaPietra only. *See* Compl. at 6. On December 10, 2019, the Complaint was filed with the Court, and docketed, without Tarver's signature. *See* Compl. at 6. In a Decision and Order filed on January 15, 2020 (the "January Order"), the Court ordered the Clerk to send Tarver a copy of the Complaint and directed Tarver to sign the Complaint within thirty days. Dkt. No. 4. On January 21, 2020, due to parole violations, Tarver was transferred to Downstate C.F. Am. Compl. at 2, 145. Upon his arrival, Tarver was in "lockdown" for five days. *See* Dkt. No. 5 at 2. While confined at Downstate C.F., Tarver, who suffers from respiratory and psychiatric issues, was denied the use of his CPAP machine and psychotropic medications for his mental disorder. *Id.* at 5; Am. Compl. at 145-46. As a result, he suffered sleep deprivation and hallucinations. Am. Compl. at 146. On February 6, 2020, Tarver filed an executed copy of the Complaint. Dkt. No. 7.

At this preliminary stage, Plaintiffs allegations are sufficient to survive.[7] The Court recommends that Plaintiffs' § 1983 Fourth Amendment claims for illegal search, seizure, false arrest and state law claims against defendants Johnson, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Officer Mika be permitted to proceed.[8] The Court further recommends that Tarver's Fourteenth Amendment excessive force claims and state law negligent infliction of emotional distress claim against Officers Iannacito, John Doe #10, and John Doe #11 also be permitted to proceed.[9] The Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.[10]

Case 5:24-cv-01378-DNH-MJK   Document 8   Filed 12/11/24   Page 27 of 31
LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2021)
2021 WL 1345520

7   In determining when a particular claim accrues,
    courts must focus on when "the plaintiff knows or
    has reason to know the injury which is the basis
    of his action." *Covington v. New York*, 171 F.3d
    117, 121 (2d Cir. 1999) (quoting *Singleton v. City
    of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).
    That is so even if "the full extent of the injury is not
    then known or predictable." *Fahs Const. Group,
    Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per
    curiam). Thus, Tarver's alternative argument; that
    the statutory period for claims arising in December
    2016 was tolled because he was not aware of
    the full extent of his injuries until "well over six
    months into his stay at Albany County C.F.," *see*
    Am. Compl. at 10, lacks merit.

8   *See* Footnote 4, *supra*.

9   *See* Footnote 4, *supra*.

10  This preliminary finding does not preclude
    Defendants from filing motions related to the
    issue of timeliness. *See Guillory v. Ellis*, No.
    9:11-CV-600 (MAD/ATB), 2013 WL 2145658,
    at *6 (N.D.N.Y. May 15, 2013) (citing *Snider v.
    Melindez*, 199 F.3d 108, 113 (2d Cir. 1999)).

A different conclusion is reached however, with respect to
Tarver's assault and battery claims. These claims accrued on
December 14, 2016, and are subject to a one-year statute of
limitations. Even affording Tarver the benefit of equitable
tolling, the claims are well outside the applicable statute of
limitations. Accordingly, Tarver's state law assault and battery
claims against Iannacito, John Doe #10, and John Doe #11
are time barred and, thus, it is recommended that the claims
be dismissed.

### B. Claims Against Burns, Remillard, Durocher, and Haley [11]

11  The Court assumes, for purposes of this Report-
    Recommendation and Order only, that Tarver was
    a pretrial detainee at the time of the alleged events
    giving rise to his claims.

### 1. Fourteenth Amendment Claims

In the Oct. Report-Rec., the Court found that Tarver's
Fourteenth Amendment excessive force and failure-to-protect
claims against Burns and Remillard survived initial review
and required a response. Dkt. No. 24 at 24. As discussed
*supra*, the Court recommended the assault and battery claims
be deemed time-barred. *Id.* at 25. In the November Order, the
District Court adopted the recommendations. Dkt. No. 32 at 4.

In the Amended Complaint, Tarver claims that two
additional corrections officers were involved in the alleged
"shakedown" of Tarver's cell and the use of force on March
13, 2018. *See* Am. Compl. at 217-18.

 **\*9** Mindful of the Second Circuit's instruction that a pro
se plaintiff's pleadings must be liberally construed, *Sealed
Plaintiff*, 537 F.3d at 191, the Court finds that Tarver's § 
1983 Fourteenth Amendment excessive force and failure-to-
protect claims against Durocher and Haley survive review
and require a response. The Court expresses no opinion
as to whether these claims can withstand a properly filed
dispositive motion. However, for the reasons set forth *supra*,
it is recommended that the assault and battery claims be
dismissed.

### 2. First Amendment Retaliation Claims

The law related to retaliation claims was discussed in the Oct.
Report-Rec. and will not be restated herein. *See* Dkt. No. 24 at
25-27. In the November Order, the Court dismissed Tarver's
retaliation claims against Burns and Remillard reasoning:

> Here, Tarver has not adequately stated
> a claim for retaliation against Burns
> and Remillard because he has not
> alleged facts to suggest that they
> were aware Tarver received a letter
> from Prisoner Legal Services or that
> LaPietra filed a lawsuit in state court.
> Moreover, there is no allegation that
> Burns or Remillard were defendants in
> that lawsuit.

Dkt. No. 24 at 27.

Although Tarver was given an opportunity to cure the defects
in the claim, the facts alleged in the Amended Complaint

do not plausibly suggest that Burns and Remillard retaliated against Tarver. Accordingly, for the reasons set forth in the Oct. Report-Rec., it is recommended that Tarver's retaliation claims be dismissed for failure to state a claim upon which relief may be granted.

### C. Fourteenth Amendment Deliberate Medical Indifference Claims

In the November Order, the Court adopted the recommendation that the constitutional claims related to Tarver's medical treatment against "Unknown Medical and Dental Workers" be dismissed due to the failure to identify any individuals personally involved. Dkt. No. 24 at 29-30; Dkt. No. 32 at 4.

In the Amended Complaint, Tarver identified Dr. Masaba, Dr. Voss, Nurse Paulino, C.O. Criscione, C.O. "505," and Nurse Jane Doe as defendants in the caption of the pleading. Am. Compl. at 1. Initially, the Court notes that Dr. Masaba, Dr. Voss, Nurse Paulino, and Nurse Jane Doe are not referenced anywhere in the body of the Amended Complaint. In the absence of factual allegations sufficient to plausibly suggest that these defendants were personally involved in conduct that violated plaintiffs' constitutional rights, the Amended Complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

With respect to C.O. Criscione and C.O. "505", Tarver alleges that Criscione was deliberately indifferent to his shoulder injury and that C.O. "505" was deliberately indifferent to his dental needs. *See* Am. Compl. at 135, 195.

Under the Fourteenth Amendment, deliberate indifference is measured from an objective perspective. *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). While the second prong now varies from Eighth Amendment cases, the first prong remains the same. *See White v. City of New York*, No. 16 Civ. 6183, 2017 WL 3575700, at *3 (S.D.N.Y. Aug. 17, 2017) ("The objective prong is the same regardless of whether the plaintiff is a pretrial detainee or a prisoner."). To satisfy the

second prong—concerning mens rea—the defendant must have behaved in an objectively reckless manner, or "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 8949 F.3d at 35. "Although mens rea is assessed from an objective perspective, as opposed to the more demanding subjective recklessness standard employed in the Eighth Amendment context, negligence is still insufficient to give rise to a valid claim under the Fourteenth Amendment." *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (internal citation omitted). "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " *Baumann v. Walsh*, 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).

**\*10** The Amended Complaint lacks any allegations plausibly suggesting that Defendants knew that Tarver suffered from a serious medical condition. Moreover, Tarver has not plead that he told Defendants he was in extreme pain or that Defendants, as non-medical personnel, withheld medical care or delayed treatment. Accordingly, the Court recommends that Tarver's Fourteenth Amendment deliberate medical indifference claims against C.O. Criscione and C.O. "505" be dismissed.

### D. ADA

The law related to ADA claims was discussed in the Oct. Report-Rec. and will not be restated herein. *See* Dkt. No. 24 at 27-29. In the Oct. Report-Rec., the Court noted that it was "not clearly indicated" who Tarver was suing for ADA violations or whether the defendants were sued in their individual or official capacities, or both. *Id.* at 28. The Court noted that the ADA did not provide for claims for monetary damages against individual officers and recommended dismissing claims for monetary relief against the officers, in their official capacity, for failure to plead discriminatory intent. *Id.* at 28-29. Moreover, the Court found that any claim for injunctive relief was rendered moot by Tarver's release from confinement. *Id.* at 29. The District Court adopted this reasoning in the November Order. *See* Dkt. No. 32.

Despite the fact that Tarver was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to these claims. For the reasons set forth in the Oct. Report-Rec., it is

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 29 of 31

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2021)
2021 WL 1345520

recommended that the ADA claims be dismissed for failure to state a claim upon which relief may be granted.

### E. *Monell* Claims Against Albany County
In the November Order, the Court dismissed Tarver's *Monell* claims against Albany County. In the Oct. Report-Rec., the Court reasoned that:

> Plaintiffs have failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of Albany County authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including deliberate medical indifference and excessive force incidents or any affirmative link between such a policy and any defendants' alleged actions with regard to Tarver.

Dkt. No. 24 at 22. The Court further noted that "conclusory allegations that Albany County failed to train and supervise defendants, *see id.*, without supporting factual allegations, fails to state a *Monell* claim against Albany County that is plausible on its face." *Id.*

Although Tarver was given an opportunity to cure the defects in his *Monell* claims against Albany County, the Amended Complaint is devoid of any additional facts to state a plausible claim against Albany County. Therefore, the Court recommends dismissing Tarver's *Monell* claims against Albany County.

In the November Order, the Court found that LaPietra's First Amendment *Monell* claims against Albany County survived initial review and required a response. *See* Dkt. No. 32. at 4. These claims are not repeated or restated in the Amended Complaint. The Court has thoroughly reviewed the amended pleading and finds no allegations related to LaPietra's First Amendment religious claim or any facts from which the Court could find that LaPietra's First Amendment rights were compromised. While courts have noted that it is "sometimes difficult" to determine whether a pro se plaintiff intends to abandon legal theories and whether to treat claims as "having been incorporated into the Amended Complaint," *Pagan v. New York State Div. of Parole*, No. 98 CIV. 5840, 2002 WL 398682, at *4 (S.D.N.Y. Mar. 13, 2002) (citations omitted), the Court is not confronted with that issue. Here, Plaintiffs were explicitly cautioned that if they chose to file an amended pleading, "[a]ny such amended complaint will replace the existing Complaint, and must be a whole integrated and complete pleading that does not rely upon or incorporate by

reference any pleading or document previously filed with the Court." Dkt. No. 24 at 34, n. 15. Because the amended pleading "supercedes the original, and renders it of no legal effect[,]" *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998), the Court recommends dismissing LaPietra's First Amendment *Monell* claim against Albany County.

### F. Remaining Claims
*\*11* In the Amended Complaint, Tarver restates the following causes of action: (1) First Amendment claims related to mail tampering; (2) Fourteenth Amendment due process claims related to charges stemming from the March 2018 use of force incident; (3) Sixth Amendment right to counsel claims; (4) constitutional claims related to lack of access to grievance procedures; and (5) Fourteenth Amendment equal protection claims. In the Oct. Report-Rec., the Court recommended that these claims be dismissed due to Tarver's failure to identify any corrections officers personally involved in these claims. Dkt. No. 24 at 30. In the November Order, the Court adopted the recommendations. Dkt. No. 32.

Despite the fact that Tarver was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to these claims. For the reasons set forth in the Oct. Report-Rec., it is recommended that these claims be dismissed for failure to state a claim upon which relief may be granted. [12]

[12]  Even assuming Tarver's claim related to access to the grievance procedure was sufficiently plead, the undersigned recommends dismissal because inmates do not have a protected interest in grievance procedures. "[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do [ ] not give rise to a cognizable § 1983 claim." *Shell v. Brzeniak*, 365 F.Supp.2d 362, 369–370 (W.D.N.Y. 2005).

In the Oct. Report-Rec., the Court discussed Rule 10(a) of the Federal Rules of Civil Procedure and advised

> ... the Court will not construe the complaint to include any claims or causes of action against these

2021 WL 1345520

individuals. For the same reason, the Court will not construe the complaint to include any claims or causes of action against other private individuals referenced in the body of the complaint, including attorneys and grocery store employees, as they are not identified as defendants in the caption of the complaint or list of parties.

Dkt. No. 24 at 31, n.13.

The Amended Complaint contains facts and allegations related to Tarver's confinement at Downstate Correctional Facility and Mohawk Correctional Facility. *See* Am. Compl. at 3-4, 136-43. Tarver alleges that he was "denied medical and dental care" at Downstate C.F. and Mohawk C.F. and that he was harassed and threatened by "C.O. Goodiemonte" and "C.O. Fitsick". *Id.*

For the reasons set forth in the Oct. Report-Rec., the Court will not construe the Amended Complaint to include any claims related to defendants not identified in the caption of the pleading of the list of parties.

**V. CONCLUSION**
**WHEREFORE**, it is hereby

**ORDERED** that the Clerk of the Court revise the docket sheet to **ADD** the following individuals as defendants in this action: Officer Keith Johnson, Officer Peterson, Officer John Doe #1, Officer John Doe #2, Officer John Doe #3, Officer John Doe #4, Officer John Doe #5, Officer John Doe #6, Officer John Doe #7, Sergeant/Lieutenant #8, Plain Clothes Officer Doe #9, Parole Officer Jane Doe #1, Parole Officer Jane Doe #2, Officer John Doe #10, Officer John Doe #11, Corrections Officer Durocher, Corrections Officer Haley, Corrections Officer "505", Corrections Officer Criscione, Silver Masaba, MD, Vladislav Voss, D.D.S., NP Anna Paulino, Nurse Jane Doe #3. Officer Jan Mika, and Officer Adam Iannacito; and it is further

**RECOMMENDED** that the following claims survive initial review and require a response: (1) LaPietra's Fourth Amendment claims for illegal search and seizure against defendants Johnson, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Officer Mika; (2) Tarver's Fourth Amendment false arrest and imprisonment claims, and related state law claims against defendants Officers Johnson, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Jane Doe #1, Jane Doe #2, Sergeant Doe #8, and Mika; (3) Tarver's Fourteenth Amendment excessive force claims and state law negligent infliction of emotional distress claims against Officers Iannacito, John Doe #10, and John Doe #11; and (4) Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against Burns, Remillard, Durocher, and Haley; and it is further

**\*12 RECOMMENDED** that the remaining claims be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that, if the Court adopts this Report-Recommendation and Order, that the following defendants be terminated from the docket report: Peterson, John Doe #6, John Doe #7, John Doe #9, C.O. 505, Criscione, Dr. Masaba, Dr. Voss, Nurse Paulino, Nurse Jane Doe #3, and Albany County; and it is further

**RECOMMENDED** that if the Court adopts this Report-Recommendation and Order, that, upon receipt from Plaintiffs of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the remaining identified defendants. At that time, the Clerk shall also forward a copy of the summonses and Amended Complaint to the Office of the Albany County Attorney, together with a copy of this Decision and Order; and it is further

**RECOMMENDED** that a response to the Amended Complaint be filed by the remaining defendants, or his/her counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**RECOMMENDED** that Plaintiffs shall take reasonable steps through discovery to ascertain the identity of the Doe defendants; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

Case 5:24-cv-01378-DNH-MJK    Document 8    Filed 12/11/24    Page 31 of 31
LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2021)
2021 WL 1345520

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiffs must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiffs are also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his or her address; their failure to do so may result in the dismissal of the action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Plaintiffs, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [13] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

[13]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(c).

**\*13 IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1345520

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.