## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

SETH R. NELSON,

Plaintiff,

5:24-CV-1378<br>(DNH/MJK)

-v.-

CMC PACKAGING SOLUTIONS,
KKR and AMAZON.COM,

Defendants.

_____

SETH R. NELSON, Plaintiff, *pro se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, Senior U.S. District Judge:

### ORDER AND REPORT-RECOMMENDATION

Plaintiff commenced this action on November 13, 2024 by filing a Complaint (Dkt. 1). On November 13, 2024, Senior United States District Judge David N. Hurd administratively closed this matter because Plaintiff failed to pay the filing fee. (Dkt. 3). On November 25, 2024, Plaintiff filed an Amended Complaint and moved to proceed *in forma pauperis* ("IFP") (Dkts. 4, 6).

On December 11, 2024, the Court issued an Order and Report-Recommendation dismissing the Amended Complaint without prejudice and with leave to amend. (Dkt. 8). The Court held that Plaintiff's claims were time barred. (Dkt. 8). The Order and Report-Recommendation also recommended that the

1

District Court grant Plaintiff leave to plead facts, that would support the Court's application of equitable tolling. (*Id.*, at 8). The Court's Order and Report-Recommendation also granted Plaintiff's IFP application. (*Id.*).

On February 6, 2025, Judge Hurd accepted the Court's Order and Report-Recommendation and dismissed the Amended Complaint. (Dkt. 19). On August 4, 2025, Judge Hurd issued a text order granting Plaintiff's letter motion (Dkt. 24) requesting clarification in as much as Plaintiff designated his filing at Dkt. 13 as the operative amended pleading. (Dkt. 37).[1] The August 4, 2025 text order also referred the Second Amended Complaint to this Court for an initial review. (*Id.*).

I.    **STANDARD OF REVIEW**

The Court must consider the sufficiency of the allegations set forth in the Second Amended Complaint considering 28 U.S.C. § 1915, which provides that a Court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the Court must consider whether the Complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp.*

---

[1] The Court will refer to this Complaint as the Second Amended Complaint.

*v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of Court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the Court has a duty to show liberality toward *pro se* litigants and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* Complaint before the adverse party has been served and has had an opportunity to respond, the Court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the Complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

3

*Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at \*2

(N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that

contains allegations that "'are so vague as to fail to give the defendants adequate

notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v.

Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.    <u>DISCUSSION</u>

### A. Fed. R. Civ. P. 8 and 10

The Second Amended Complaint asserts three claims and attaches 21

exhibits, none of which are referred to in the pleading or otherwise shed light on

Plaintiff's claims. *See* (Dkt. 14 ). Beyond that, the Court is unable discern the

factual nature of Plaintiff's claim. A Complaint that fails to comply with the

pleading requirements of Fed. R. Civ. P. 8 and 10 should be dismissed when it

"presents far too a heavy burden in terms of defendants' duty to shape a

comprehensive defense and provides no meaningful basis for the Court to assess

the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.

Jun. 9, 1996).

### B. Statute of Limitations

"Before an aggrieved party can assert a Title VII claim in federal court,

[they are] generally required to exhaust the administrative remedies provided by

the statute." *Duplan v. City of New York,* 888 F.3d 612, 621 (2d Cir. 2018). "That

4

is, a Title VII plaintiff generally must file a charge of discrimination with the EEOC within three hundred days after the alleged unlawful employment practice occurred," and "must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." *Id*. (cleaned up).

"The 90-day period is strictly enforced, and cannot be extended by even one day." *Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 589 (W.D.N.Y. 2008) (cleaned up). "Although *pro se* plaintiffs are entitled to leniency in other areas of litigation, the case law is clear: The 90-day deadline is strictly enforced against represented and *pro se* plaintiffs alike." *Perez v. Mason Tenders Dist. Council Tr. Funds,* No. 17-CV-1022, 2017 WL 5125542, *3 (S.D.N.Y. Nov. 1, 2017)

The 90-day period is akin to a statute of limitations which may be tolled in certain situations. *See Johnson*, 731 F.2d at 146; *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982). "Normally it is assumed that a mail document is received three days after its mailing," and it is presumed "that a notice provided by a government agency has been mailed on the date shown on the notice." *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525-26 (2d Cir. 1996); *see also Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 37 (2d Cir. 2011). The three-day presumption can be rebutted if "a claimant presents sworn testimony or other admissible evidence from which it could be reasonably inferred that either the notice was mailed later than its typewritten date or that it took longer than three days to reach [the claimant] by mail." *Sherlock*, 84 F.3d at 526; *see also Gardner v. Honest Weight Food Coop., Inc.*, 96 F. Supp. 2d 154, 159 (N.D.N.Y.

5

2000). If a plaintiff only presents evidence showing their "own lack of recollection" or a "mere denial of receipt." three-day presumption is not rebutted. *Sherlock,* 84 F.3d at 526; *see also Isaacson v. N.Y. Organ Donor Network*, 405 F App'x. 552, 553 (2d Cir. 2011).

Here, the EEOC's Notice-of-Right-to-Sue-letter which Plaintiff alleges he received on August 6, 2024 *but failed to attach as an exhibit to the Second Amended Complaint*, presumably notified Plaintiff that he had the right to file a civil action in the appropriate United States District Court within ninety calendar days from the date he received the EEOC's decision. (Second Amended Compl. ¶ 11). Plaintiff was therefore required to file his complaint on or before November 5, 2024, which would have been within 90 days following the August 6, 2024 receipt of the Right-to-Sue-letter. Plaintiff did not commence this action until November 13, 2024, 99 days after receipt of the EEOC's Right-to-Sue-letter. (Dkt. No. 1). Despite Plaintiff's *pro se status*, the Court is obligated to strictly apply the filing deadline. Accordingly, Plaintiff's Second Amended Complaint must be dismissed as untimely, unless he can establish that the 90-day time period should be tolled. *See Pryor v. Nat'l Grid*, No. 10-CV-6507, 2011 WL 3251571, at *2 (S.D.N.Y. Jul. 28, 2011) (plaintiff's action was dismissed even though filed only two days past the filing deadline).

The doctrine of equitable tolling allows the Court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *See Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir. 1996)

(citation omitted). To apply equitable tolling, the Court must find that "extraordinary circumstances" prevented a plaintiff from performing the required act, and that the plaintiff acted "with reasonable diligence" during the period that he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). "The term, 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). "It is not enough for a party to show that he experienced extraordinary circumstances. [They] must further demonstrate that those circumstances caused [them] to miss the original filing deadline." *Id.* (cleaned up). Equitable tolling "is only appropriate in rare and exceptional circumstance[s]." *Serilli-Edelglass v. N.Y. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotations omitted).

Despite the Court's suggestion in its December 11, 2024 Order and Report-Recommendation, Plaintiff has not pleaded any facts to support the application of equitable tolling. Plaintiff has not provided the Court with any basis to allow his claims to proceed despite being untimely. The Court therefore recommends that the Second Amended Complaint be dismissed with prejudice and without leave to amend.

## III.    OPPORTUNITY TO AMEND

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a Plaintiff's cause of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court recommends dismissing Plaintiff's Second Amended Complaint with prejudice and without leave to amend based on futility. Plaintiff's claims are untimely, and he has not, despite being afforded the opportunity to do so, asserted any facts that would allow the Court to apply equitable tolling.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the District Court **DISMISS** Plaintiff's Second Amended Complaint **WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** based on futility, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[2]

---

[2] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: August 21, 2025.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 10 of 33

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]      On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

 **\*1**  The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]      Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

 **\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 11 of 33

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]    Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See., e.g.,* *Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 12 of 33

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]  The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]  The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]  The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4**  The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 13 of 33

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

**B. Eighth Amendment**

**1. Excessive Force Claims**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Failure To Intervene**

 *5 The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**3. Deliberate Indifference to Serious Medical Needs**

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 14 of 33

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoda*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 5:24-cv-01378-DNH-MJK Document 38 Filed 08/21/25 Page 15 of 33

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8] The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06- CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer,* 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor,* 451 U.S. 527, 541 (1981)); *Davis v. New York,* 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson,* 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia,* a Court of Claims action." *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin,* 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]    The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach,* 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.,* 714 F.3d at 106; *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis,* 576 F.3d at 134; *Palmer,* 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer,* 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 65; *see Davis,* 576 F.3d at 133.[10]

[10]    The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer,* 364 F.3d at 65-66; *see Davis,* 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 19 of 33

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 20 of 33

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 5125542, 2017 A.D. Cases 393,252

2017 WL 5125542
United States District Court, S.D. New York.

Xiomara PEREZ, Plaintiff,
v.
MASON TENDERS DISTRICT
COUNCIL TRUST FUNDS, Defendant.

17 Civ. 1022 (PAE) (AJP)
|
Signed 11/01/2017

**Attorneys and Law Firms**

Xiomara Perez, New York, NY, pro se.

Joseph C. O'Keefe, Jr., Proskauer Rose LLP, Newark, NJ, for Defendant.

OPINION & ORDER

Paul A. Engelmayer, United States District Judge

**\*1** *Pro se* plaintiff Xiomara Perez brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117, alleging, primarily, that Mason Tenders District Counsel Trust Funds (hereinafter "Mason Tenders") failed to accommodate her disability. Now before the Court is the July 12, 2017 Report and Recommendation of the Hon. Andrew J. Peck, United States Magistrate Judge, recommending that the Court grant Mason Tenders' motion to dismiss, Dkt. 14, as well as Perez's objections to the Report, Dkt. 20 ("Objections"), and Mason Tenders' opposition to Perez's Objections, Dkt. 27.

For the following reasons, the Court adopts Judge Peck's recommendation and dismisses this action.

**I. Background** [1] **and Procedural History**

[1]     The facts are taken predominantly from Perez's complaint and attachments, Dkt, 2, her opposition to the motion to dismiss and attachments, Dkt. 15 ("Perez Opp."), and her objections to Judge Peck's Report and Recommendations and attachments, Objections. These facts are assumed true for the purposes of resolving the instant motion to dismiss.

Since 2005, Plaintiff Xiomara Perez ("Perez") has been an employee at Mason Tenders. Dkt. 2 at 10. On approximately May 13, 2016, according to Perez's complaint, she filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3. On October 4, 2016, she completed an EEOC intake questionnaire in which she alleged that her employer had failed to accommodate her disability, *id.* at 9-13, which she described as "sleepiness, weakness, tiredness, aches and inability to walk a normal pace," *id.* at 12.

On November 8, 2016, the EEOC dismissed her charge, issuing a "Dismissal and Notice of Rights" to Plaintiff. *Id.* at 5. Perez, it appears, received this notice the same day. *Id.* at 4. The EEOC, according to the notice, had been "unable to conclude that the information obtained establishes violations of the statutes." *Id.* at 5. The notice told Perez that she had 90 days, from her receipt of the notice, to file a lawsuit based on her charge. *Id.*

On December 13, 2016, Perez retained a lawyer to help her negotiate a raise with Mason Tenders. Perez Opp. at 4; *see also* Perez Opp. Ex. A. According to Perez, her lawyer told her she would have to file a complaint herself if the negotiations failed. Objections at 7. He was to inform her by telephone immediately of the outcome of those negotiations. *Id.*

On January 24, 2017, Perez's lawyer wrote a letter informing Perez that the wage negotiations with her employer had failed. *See* Perez Opp. Ex. C. On February 6, 2017, [2] Perez received that letter. Objections at 7.

[2]     In her opposition to the motion to dismiss, Perez states that she received this letter on February 3, 2017. *See* Perez Opp. at 4.

On February 8, 2017, 92 days after her receipt of the EEOC notice, Perez filed her complaint with this Court. Dkt. 2.

On June 19, 2017, Mason Tenders filed a motion to dismiss the complaint and memorandum of law in support. Dkts. 9-10.

**\*2** On June 28, 2017, this Court referred the case to Magistrate Judge Peck for a report and recommendation on Mason Tenders' motion to dismiss. Dkt. 14.

On June 30, 2017, Perez filed a response in opposition to the motion to dismiss. Dkt. 15.

Perez v. Mason Tenders District Council Trust Funds, Not Reported in Fed. Supp. (2017)

2017 WL 5125542, 2017 A.D. Cases 393,252

Case 5:24-cv-01378-DNH-MJK    Document 38    Filed 08/21/25    Page 25 of 33

On July 11, 2017, Mason Tenders filed its reply. Dkt. 17.

On July 12, 2017, Judge Peck held a hearing and, on the record, explained that he believed Mason Tenders' motion should be granted because Perez's complaint had been untimely. Dkt. 22 ("Hr'g Trans."). That same day, Judge Peck issued a report and recommendation which stated the following: "For the reasons stated on the record at today's conference (*see* transcript), the Court should dismiss the case for failure to sue within 90 days of receipt of the E.E.O.C. right to sue letter." Dkt. 19.

On July 26, 2017, Perez filed her objections to Judge Peck's report and recommendation. Dkt. 20. On July 27, 2017, Perez filed a sur-reply to Mason Tenders's motion to dismiss. Dkt. 21. On July 28, 2017, Mason Tenders filed a letter request, directed at Judge Peck, to strike Perez's sur-reply. Dkt. 22. On August 9, 2017, Judge Peck denied Mason Tenders' letter request. Dkt. 26. On August 9, 2017, Mason Tenders filed its response to Perez's objections to Judge Peck's report and recommendations. Dkt. 27.

## II. Discussion

After a magistrate judge has issued a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*. *See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir. 1998). But when the objections simply reiterate previous arguments or make only conclusory statements, the court should review the Report and Recommendation for clear error. *Dickerson v. Conway,* No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see Kirk v. Burge,* 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). This is so even in the case of a *pro se* petitioner. *Cf. Molefe v. KLM Royal Dutch Airlines,* 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

Evaluated under either standard, Judge Peck's Report and Recommendation merits adoption. Perez admitted in her complaint and conceded on the record before Judge Peck that her complaint was filed late—92 days after she received notice of the dismissal and of her right to sue in federal or state court. Rather than disputing the fact of the missed deadline, she argues that she is entitled to leniency because she is *pro se* and because her attorney was negligent. Both arguments fail.

## A. The 90-Day Deadline to File Suit

Before filing a lawsuit in federal court, under the ADA, a complainant must generally file a charge with the EEOC. *See Gomez v. N.Y.C. Police Dep't,* 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016). The EEOC then determines whether to pursue that charge or to dismiss it. If the EEOC dismisses the charge, it gives notice to the complainant of her right to sue in federal or state court. The complainant then has 90 days from receipt of that notice to commence a discrimination action. *See* 42 U.S.C. §§ 2000e-5(f), 12117(a); *see also Tiberio,* 664 F.3d at 37 (2d Cir. 2011).

**\*3** Although *pro se* plaintiffs are entitled to leniency in other areas of litigation, the case law is clear: The 90-day deadline is strictly enforced against represented and *pro se* plaintiffs alike. If a *pro se* plaintiff misses her deadline by a few days, or even one day, her action must be dismissed as untimely. *See, e.g., Ayala v. U.S. Postal Serv.,* No. 15-CV-4919 (VSB), 2017 WL 1234028, at *6 (S.D.N.Y. Mar. 31, 2017) (one day late); *Moore v. City of New York,* No. 15 Civ. 4578 (KPF), 2016 WL 3963120, at *7 (S.D.N.Y. July 21, 2016) (five days late); *Moscowitz v. Brown,* 850 F. Supp. 1185, 1191 (S.D.N.Y. 1994) (one day late), *abrogated on other grounds,* 216 F.3d 258 (2d Cir. 2000); *see also Nash v. Human Dev. Servs.,* No. 02 Civ. 8551 (DF), 2003 WL 22871911, at *5 (S.D.N.Y. Dec. 4, 2003) (The 90-day time limit "should be strictly enforced and not extended by even one day.") (quoting *Holmes v. NBC/GE,* 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996)). A *pro se* litigant's mistake about the correct way to calculate the deadline, such as the misconception that the 90-day deadline is equivalent to a three-month deadline, is not an excuse. *See Smith v. Sebelius,* No. 10 Civ. 6356 (JSR) (DF), 2011 WL 7427733, at *6 (S.D.N.Y. Dec. 28, 2011), *report and recommendation adopted,* No. 10 Civ. 6356 (JSR) (DF), 2012 WL 627237 (S.D.N.Y. Feb. 27, 2012). Because plaintiff admits that her complaint was filed two days after the 90-day deadline, [3] her case must be dismissed unless that deadline was, for some reason, tolled.

3    The Dismissal and Notice of Rights does not state when Perez *received* this document. *See* Dkt. 2 at 5. In instances where the notice has been mailed to the complainant, courts ordinarily apply a presumption that it was received three days after it was mailed. *See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir. 1996); *Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 37 (2d

2017 WL 5125542, 2017 A.D. Cases 393,252

Cir. 2011). Here, however, Perez concedes that she received the notice on November 8, 2016—she so acknowledged both in her complaint and on the record before Judge Peck. *See* Dkt. 2 at 3; Hr'g Trans. 3. Accordingly, Perez is not entitled to invoke the three-day presumption. *See Jones v. Rochester City Sch. Dist.,* 676 Fed.Appx. 95, 97 (2d Cir. 2017) (declining to apply presumption where "Appellant made clear in his complaint and summary judgment papers that he received the letter on June 29, 2011.").

**B. Perez's Claim of Attorney Negligence**

Perez argues that, because her attorney failed to inform her promptly of the failure of his salary negotiations on her behalf, the statute of limitations should be tolled. The 90-day deadline to file an ADA complaint is subject to equitable tolling. *See Moore,* 2016 WL 3963120, at *6. However, for tolling to be warranted, the circumstances that caused the delay must be "rare and exceptional." *Zerilli-Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (quoting *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000)). A plaintiff's "garden variety claim of excusable neglect" by her attorney is not enough to warrant equitable tolling. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990); *see also Reeves v. City of Yonkers,* No. 16-CV-2223 (KMK), 2017 WL 2275025, at *4 (S.D.N.Y. May 24, 2017) (citing *Irwin*). Instead, something more akin to "effective abandonment of the attorney-client relationship" is required. *See Martinez v. Superintendent of E. Corr. Facility,* 806 F.3d 27, 31 (2d Cir. 2015) (habeas post-conviction review) (quoting *Rivas v. Fischer,* 687 F.3d 514, 538 (2d Cir. 2012)); *see also Reeves,* 2017 WL 2275025, at *5 (citing *Martinez*).

Here, Perez does not argue that her attorney was responsible for filing her ADA lawsuit; in her objections, Perez admits that the attorney told her she, not he, was responsible for doing so. The attorney's failure to report more quickly to Perez that her employer had declined to give her a raise is not conduct that rises to the level of such abandonment. It is at most "garden variety" negligence. *Cf. Lawrence v. Greene,* No. 06-CV-0202 (DLI), 2011 WL 1327128, at *4 (E.D.N.Y. Mar. 31, 2011) (refusing to apply equitable tolling when counsel failed to file habeas petition and was "delayed at times" in responding to petitioner's letters). Under these circumstances, the exceptional remedy of equitably tolling Perez's claims is not warranted. Her ADA claims must instead be dismissed as untimely.

**CONCLUSION**

**\*4** For the foregoing reasons, the Court grants Mason Tenders' motion to dismiss the Complaint. Perez's claims are dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 9 and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5125542, 2017 A.D. Cases 393,252

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Brief and Appendix for Defendant-Appellee**<br>Xiomara PEREZ, Plaintiff-Appellant, v. MASON TENDERS DISTRICT COUNCIL TRUST FUNDS, Defendant-Appellee.<br>2018 WL 3109493 |  | C.A.2 | June 22, 2018 | Brief |
| **2. Docket 17-3896**<br>PEREZ v. MASON TENDERS DISTRICT COUNCIL | — | C.A.2 | Dec. 01, 2017 | Docket |
| **3. Docket 1:17-CV-01022**<br>Perez v. Mason Tenders District Council Trust Funds | — | S.D.N.Y. | Feb. 08, 2017 | Docket |

**History (2)**

**Direct History (2)**

1.  Perez v. Mason Tenders District Council Trust Funds
2017 WL 5125542 , S.D.N.Y. , Nov. 01, 2017

*Affirmed by*

2.  Perez v. Mason Tenders District Council Trust Funds
742 Fed.Appx. 584 , 2nd Cir.(N.Y.) , Nov. 21, 2018

2011 WL 3251571
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Natalie PRYOR, Plaintiff,

v.

NATIONAL GRID, et al., Defendants.

No. 10 Civ. 6507(PAC)(THK).
|
July 28, 2011.

*ORDER ADOPTING R & R*

Honorable PAUL A. CROTTY, District Judge.

 **\*1** Plaintiff Natalie Pryor ("Plaintiff") claims that Defendants National Grid, Evelyn Ramirez, Jose Navarro, Sharisse Simpkins, Lisa Kiley, and Gilmore Cookhorn ("Defendants") unlawfully terminated her employment, violating Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff was employed as a supervisor in National Grid's Jamaica, Queens office until her employment was terminated on March 27, 2009. She filed a charge, dated April 1, 2010, with the Equal Employment Opportunity Commission ("EEOC"), alleging race, sex, and age discrimination, and unlawful retaliation. On May 21, 2010 the EEOC dismissed the charge and gave Plaintiff a Dismissal and Notice of Rights ("right-to-sue letter"). Plaintiff filed this action on August 24, 2010, and it was docketed on September 1, 2010.

On September 13, 2010, the Court referred the case to Magistrate Judge Katz for general pretrial supervision. On February 24, 2011, Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). Plaintiff did not file an opposition to Defendants' motion. On June 29, 2011, Magistrate Judge Katz issued his Report and Recommendation ("R & R") that the Court dismiss Plaintiff's Complaint. On July 6, 2011, Magistrate Judge Katz filed an order extending the time for filing objections to July 21, 2011. On July 20, 2011, Plaintiff filed objections. For the following reasons, the Defendants' motion to dismiss is GRANTED.

*MAGISTRATE JUDGE KATZ'S R & R*

Under Title VII and the ADEA, a claimant must file an EEOC charge within 180 days after an alleged discriminatory act. 42 U.S.C. § 2000e–5(e)(1). In New York, however, the time for filing an EEOC charge is extended to 300 days. *See Lewis v. NYCTA,* 126 F. App'x 20, 21 (2d Cir.2005). "[A] charge is sufficient when the EEOC receives a writing (or information that an EEOC employee reduces to a writing) from the person making the charge that names the employer and generally describes the allegedly discriminatory acts. According to the regulations, a charge also should contain, but is not required to contain, other information such as the full contact information for the employer and the individual filing the charge, and a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." *Holowecki v. Fed. Exp. Corp.,* 440 F.3d 558, 566 (2d Cir.2006) (citations and internal quotation marks omitted).

In dismissing Plaintiff's complaint, Magistrate Judge Katz found that her EEOC charge was untimely. It is undisputed that the alleged discriminatory acts ended by March 27, 2009. (R & R 4.) In Plaintiff's complaint, she alleged that she filed a charge with the EEOC on January 13, 2010. (*Id.*) Magistrate Judge Katz, however, found that Plaintiff was "mistaken." (*Id.*) Although Plaintiff contacted the EEOC in January, Magistrate Judge Katz found that the letter Plaintiff received from the EEOC on January 13, 2011 was not a charge and referred to the date listed on the charge that was eventually filed with the EEOC—April 1, 2010. (LaBerge Decl. Ex. A, at 3.) As April 1, 2010 is beyond the 300–day statute of limitations, and as Plaintiff did not provide any reason why the 300–day limitation should not bar her claims, Magistrate Judge Katz recommended that the Court dismiss Plaintiff's federal claims. Further, Magistrate Judge Katz recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims because no exceptional circumstances exist. (R & R 6) *See Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986).

*PLAINTIFF'S OBJECTIONS*

 **\*2** A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the recommendations of the

magistrate judge, the court is obligated to review the contested issues *de novo. Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir.1998). The Court, however, "may adopt those portions of the Report [and Recommendation] to which no objections have been made and which are not facially erroneous." *La Torres v. Walker,* 216 F.Supp.2d 157, 159 (S.D .N.Y 2000).

On July 18, 2011, Plaintiff filed an objection to Magistrate Judge Katz's R & R. Specifically, Plaintiff claims that "the paperwork was with the EEOC on January 15, 2010." (Obj.2.) With her objection, Plaintiff submitted a letter from EEOC Enforcement Supervisor John Waldiner, dated July 6, 2011, which states:

> According to our records, your initial inquiry was filed with the U.S. Equal Employment Opportunity Commission (EEOC) on January 15, 2010. Said inquiry was evaluated by the EEOC and, because the last date of harm alleged was March 27, 2009, was deemed to be timely filed within the statutory 300–Day limit on the 294th day of the acceptable filing period.

(Letter Attached to Pl.'s Obj.) Under 42 U.S.C. § 2000e–5(b), "Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." The EEOC found that Plaintiff's submission on January 15, 2010 was sufficient. In addition, it appears that Plaintiff filed at least some information with the EEOC on January 15, 2010, because the stamp on the April 1, 2010 charge was amended from January 15, 2010 to April 1, 2010. (LaBerge Decl. Ex. A., at 3.) As a result, the Court declines to adopt Magistrate Judge Katz's R & R and dismiss Plaintiff's federal claims for this reason.

The Court, however, must dismiss Plaintiff's federal claims on an alternative ground, which Defendants argued in their motion to dismiss, but which Magistrate Judge Katz never reached. The EEOC issued Plaintiff a right-to-sue letter on May 21, 2010 and Plaintiff states in her complaint that she received it on May 24, 2010. A Plaintiff must commence a Title VII or ADEA claim in federal court within 90 days of her receipt of the EEOC's right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1). As a result, in order for this action to be timely, it must have been filed in this Court by August 22, 2010. Plaintiff's materials were filed in the *pro se* office on August 24, 2010 —two days past the filing deadline. Although *pro se* litigants are usually offered leniency, when it comes to statutory filing deadlines courts have consistently held that even *pro se* plaintiffs must be held to strict compliance. *See Cohen v. Fed. Exp. Corp.,* 544 F.Supp.2d 334, 342 (S.D.N.Y.2008) ("Time limits are not to be disregarded by courts out of a vague sympathy for particular litigants.") (citation omitted); *Sanchez v. Nat'l Cleaning Co.,* 11 F.Supp.2d 453, 455 (S.D.N.Y.1998) (dismissing *pro se* plaintiff's complaint which was filed two days late). As Plaintiff has not offered any reason why the Court should not enforce such a deadline, the Court must dismiss Plaintiff's federal claims. In addition, for the reasons discussed in Magistrate Judge Katz's R & R, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

### *CONCLUSION*

**\*3** For the foregoing reasons, Plantiff's federal claims are dismissed with prejudice as untimely. In addition, the Court declines to exercise jurisdiction over Plaintiff's state law claims. The Clerk of Court is directed to enter judgment and close this case. Pursuant to 28 U.S.C § 1915(a), I find that any appeal from this order would not be taken in good faith.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3251571

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:10cv06507**<br>PRYOR v. NATIONAL GRID ET AL | — | S.D.N.Y. | Sep. 01, 2010 | Docket |

**History (2)**

**Direct History (2)**

🚩 1.  Pryor v. National Grid
2011 WL 3251574 , S.D.N.Y. , June 29, 2011

*Report and Recommendation Rejected by*

2.  Pryor v. National Grid
2011 WL 3251571 , S.D.N.Y. , July 28, 2011